[Civ. No. 583.    Fifth Dist.    Sept. 7, 1966.]

TOMITY   CORPORATION,   Plaintiff   and   Appellant,   v.
DOROTHY  JADOFF  SOVKUEFF  et  al.,  Defendants
and  Respondents.

Chevalier & Adams, Hays & Hays and James N. Hays for Plaintiff and Appellant.

Edward H. Spraker and Eugene A. Biglow for Defendants and Respondents.

STONE, J.—Appellant and respondents own contiguous parcels of commercial property fronting on Blackstone Avenue in the City of Fresno, respondents' parcel bordering appellant's property on the south. In 1908 Garabed Oroian and his wife acquired the entire property in a single 20-acre parcel described as the northwest quarter of Lot 8 of Wolters Colony. The 20-acre parcel was bordered on the west by Blackstone Avenue and on the north by Shaw Avenue, title extending to the center of both roadways. In 1910 the Oroians deeded the south half of their property to respondents' predecessors. Oroians retained the north half, bordered by Shaw Avenue, and that portion remained in the family ownership until distributed, one-half to appellant's predecessor, by decree of distribution in the Estate of Garabed Oroian June 19, 1950.

The controversy arises because the 1910 Oroian deed to respondents' predecessors described the property as the south half of the entire parcel. Specifically, the question is whether the Oroians conveyed one-half of their property measured from the section line in the middle of Shaw, or one-half of the usable portion of their property commencing at the lot line at the edge of Shaw. Up until July 1961 the owners of both parcels accepted a line arrived at by dividing the width of the original parcel commencing at the center of Shaw Avenue.

Dr. Downing acquired the property on the north side of the line in 1952 and some time thereafter conveyed it to appellant corporation, of which he is president. In 1961 he notified respondents that the property should be measured from the edge of Shaw Avenue, rather than from the middle of the street, which would move the line 15 feet south on respondents' lot, that is, 15 feet south of the line that had been accepted as the dividing line up to that time. This action followed.

Appellant's case is bottomed on the following language in *Earl* v. *Dutour*, 181 Cal. 58, at page 60 [183 P. 438, 6 A.L.R. 1163] : ■ "In the absence, therefore, of any circumstance

indicating that a more unusual and technical meaning of the word 'lot' was contemplated and intended by the grantor, it will be presumed that the grant of a fractional part or of a given number of feet of a certain lot or parcel of land conveys the given fractional part or number of feet of that portion of the lot or parcel of land which is set apart for private use and occupancy.''

The foregoing presumption in *Earl* v. *Dutour, supra,* is not conclusive. (*Peake* v. *Azusa Valley Savings Bank,* 37 Cal.App. 2d 296, 302 [99 P.2d 382].) In *Pierson* v. *Bradfield,* 43 Cal. App.2d 519, the court faced a question similar to the one before us and summarized the law thus, at page 524 [111 P.2d 460] : ''The case of *Earl* v. *Dutour, supra,* merely states that the facts there existing created a *rebuttable presumption,* and its applicability depended upon the particular facts of each separate case. A rebuttable presumption may be rebutted by evidence opposed to it, and when the evidence is substantial a finding by the court thereon will not be disturbed on appeal (*Duehren* v. *Stewart,* 39 Cal.App.2d 201 [102 P.2d 784]).''

The original map or plat of Wolters Colony, recorded in 1882, reflects that each lot consisted of approximately 85 acres. Obviously it was agricultural land; it was improved with apricot and fig trees when the Oroians acquired the parcel in 1908 and when they divided it in 1910. That it was agricultural property no doubt explains why up to 1961 each surveyor mentioned in the record measured from section lines, that is, from the center of the county road. A licensed surveyor, Mr. A. Segel, surveyed the property in 1925 and used the section line in the center of Shaw Avenue as the boundary of the property conveyed. A diagram and notes made by him at that time were received in evidence and reflect that ''All fences, ditches, roads and planting check for equal division of the section. The proportioning of the section according to Map of Wolters Colony has not been observed in any case throughout the section. Make this subdivision on legal lines and disregard lot lines.''

In 1947 another licensed surveyor, Lars Anderson, by survey confirmed the boundary lines established by Segel in 1925. In 1958, James E. McPheeters, a licensed surveyor, also measured from the center of the street, using the section line method of computing distances.

It is particularly important that appellant's surveyor, who chose the street boundary as his starting point in measuring the width of the two lots, testified as follows:

"Q. Now, was it always the custom to divide lots in this manner? A. No, sir. It was not.

"Q. Did they formerly do it another way? A. In the majority of the cases 40 years ago any lots of this nature in large parcels were divided from the center of the road, disregarding lot lines.

"Q. Forty years ago or more was this the generally accepted method? A. Yes, sir. It was."

This testimony was admissible under Code of Civil Procedure section 1870, subdivision 11, which provides that evidence may be given concerning "Common reputation existing previous to the controversy, respecting facts of a public or general interest more than thirty years old, and in cases of pedigree and boundary; . . ."

Not only was the map of Wolters Colony subdivision filed more than 40 years ago, but Oroians acquired the property and divided it more than 40 years ago.

■ In addition to the evidence adduced by the various surveyors, the conduct of the grantor and grantee and their successors in relation to the property was received in evidence. It was admissible under the rationale of *City of Redlands* v. *Nickerson,* 188 Cal.App.2d 118, 127 [10 Cal.Rptr. 431], wherein it is held that: "The practical construction placed upon the deed by the parties, as evidenced by their conduct in relation to the property involved, is proof of their intention with respect to the extent of the conveyance made thereby."

In *People* v. *Ocean Shore R.R., Inc.,* 32 Cal.2d 406 [196 P.2d 570, 6 A.L.R.2d 1179], the Supreme Court viewed the conduct of the grantor and the grantee and their successors as "the practical construction placed on the instrument by the parties." In approving conduct as evidence of a grantor's intent, the court said, at page 414: "It is well settled that a deed indefinite in its terms may be made certain by the conduct of the parties acting under it."

We look, then, at the conduct of the parties. The owners of the entire parcel conveyed the south half of the parcel in 1910 and retained the north half until the death of Mr. Oroian and the distribution of the property in probate proceedings in 1950. In 1938 or 1939, when Oroian was in possession of the north (appellant's) parcel, respondents' predecessor, using the long accepted dividing line, surfaced a roadway over the 15 feet appellant now claims. Respondents and their predecessors used the roadway continuously until 1961. Since this period of use included 11 or 12 years while Oroian, the grantor, owned appellant's lot, it is demonstrative evidence of

the original grantor's "practical construction" of the description as beginning in the middle of Shaw Avenue.

Subsequent to Dr. Downing's acquisition of his property in 1952, respondents granted an easement to the Pacific Telephone & Telegraph Co. for a pole line along the 15-foot strip, and granted a utility easement to the Pacific Gas & Electric Co. for gas mains also within the 15-foot area, without objection by Dr. Downing. As late as 1960, the doctor filled in and blacktopped the southern portion of his property up to what respondents contend is the true line, and he built a lip along that boundary so surface waters would drain toward Blackstone Avenue rather than upon respondents' property. Furthermore, in 1960, Dr. Downing suggested to respondents the joint construction of a 20-foot wide concrete approach to a driveway on Blackstone, each to pay one-half of the cost, and a new blacktopped road for joint use. Respondents agreed, and Dr. Downing engaged a Mr. Davis to do the work. Davis laid half the approach and half the new roadway on each side of the long existing dividing line.

Dr. Downing made no claim that the improvements were misplaced until the following year, but he did testify that Davis failed to follow his plans and specifications in laying the roadway. However, the plans and specifications used by Davis were not produced by Dr. Downing, nor was Mr. Davis called as a witness.

The guidelines that an appellate court must follow in a boundary dispute are set forth in *Gibson* v. *Cobb*, 236 Cal. App.2d 226, at pages 229-230 [46 Cal.Rptr. 57], as follows: "Where the defendants contend that the evidence is insufficient to support the findings, it is the rule that 'Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings.' [Citation.] In a boundary dispute the question of the legally recognizable boundary line is an issue of fact. [Citation.] 'The appellate court must accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence' [citation], and must reject those that will support a contrary conclusion [citation]. It must be assumed that every factual conflict was resolved by the trial judge in favor of the prevailing litigant [citation]; and if two or more deductions may be reasonably drawn from the evidence, the reviewing court lacks the power to substitute its deduction for that of the trial judge. [Citation.] These rules apply to boundary dispute cases.''

Viewing the evidence in the light of the foregoing rules, we believe the finding of the trial court that it was the intention of the common grantor, Oroian, to divide his parcel of property in half, commencing in the center of Shaw Avenue and not at the lot line beside Shaw Avenue, is supported by substantial evidence.

The judgment is affirmed.

Conley, P. J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.