[Civ. No. 46573. First Dist., Div. Four. Feb. 5, 1980.]

DAVID C. HENINGER et al., Plaintiffs and Appellants, v.
BERNARD J. DUNN et al., Defendants and Respondents.

## Counsel

Tichinin & Mitchell and Bruce Tichinin for Plaintiffs and Appellants.

Frederick L. Grundy for Defendants and Respondents.

## Opinion

**CHRISTIAN, J.**—Appellants David and Eliza Heninger sued respondents Bernard and Elise Dunn for an injunction and damages for trespass. After a nonjury trial the court granted injunctive relief as prayed, but denied any award of damages. The appeal challenges the judgment insofar as it denied damages.

In April 1971 respondents, who owned mountain land adjoining land owned by appellants, bulldozed a rough road, approximately seven-tenths of a mile long, on appellants' land. Respondents acted despite appellants' objections, relying on the advice of an attorney who had erroneously told respondents that they held a valid easement permitting the cutting of the road. The bulldozing killed or damaged 225 trees, and destroyed much vegetative undergrowth, but the road provided additional access to appellants' property, thereby increasing its market value $5,000—from $179,000 just before the trespass to $184,000 immediately following the trespass.

The trial court found that it was technically possible to replace the dead or dying trees, at a cost of $221,647, and that vegetative undergrowth could be restored at a cost of $19,610. But the court denied damages because there was no depreciation in the value of appellants' property, concluding that "[i]t is the rule in California that if the cost of repair or restoration of damaged property amounts to more than its depreciation in value because of the damage, the plaintiff cannot obtain a greater sum than the amount of the depreciation." Appellants contend that the court's understanding of the rule of damages was incorrect, and that the proper measure of their damages was the lesser of costs of restoration or the pretrespass value of their property, i.e., $179,000.

██ The measure of damages in California for tortious injury to property is "the amount which will compensate for all the detriment proximately caused thereby...." (Civ. Code, § 3333.) Such damages

are generally determined as the difference between the value of the property before and after the injury. (Johns, California Damages (2d ed. 1977) § 6.28, p. 297; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 918, p. 3203.) This measure of damages has been used to compensate a plaintiff for damages resulting from injury to trees located on his property. (*Altpeter* v. *Postal Telegraph-Cable Co.*(1917) 32 Cal.App. 738, 741 [164 P.35].) Diminution in market value, however, is not an absolute limitation; several other theories are available to fix appropriate compensation for the plaintiff's loss. "There is no fixed, inflexible rule for determining the measure of damages for injury to, or destruction of, property; whatever formula is most appropriate to compensate the injured party for the loss sustained in the particular case, will be adopted." (*Basin Oil Co.* v. *Baash-Ross Tool Co.* (1954) 125 Cal.App.2d 578, 606 [271 P.2d 122]; see also *Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 576 [136 Cal.Rptr. 751]; Rest.2d Torts, § 929.)

■ One alternative measure of damages is the cost of restoring the property to its condition prior to the injury. (*Mozzetti* v. *City of Brisbane, supra*, 67 Cal.App.3d at p. 576; Rest.2d Torts, § 929.[1]) Courts will normally not award costs of restoration if they exceed the diminution in the value of the property; the plaintiff may be awarded the lesser of the two amounts. (Rest.2d Torts, § 929, com. b.) It has been said that the rule in California is the same. (*Mozzetti* v. *City of Brisbane, supra*, 67 Cal.App.3d at p. 576; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 919, p. 3204. Cf. *Herzog* v. *Grosso* (1953) 41 Cal.2d 219, 226 [259 P.2d 429] [defendant argued award for diminution in value was error where cost of restoration was less; held that defendant failed to prove restoration costs less than diminution in value].)

Appellants contend that the California rule for recovery of restoration costs differs, and entitles them to recover the lesser of restoration costs or the value of their property prior to the injury (i.e., $179,000),

---

[1]Restatement Second of Torts, section 929: "Harm to Land from Past Invasions

"(1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred, (b) the loss of use of the land, and (c) discomfort and annoyance to him as an occupant.

"(2) If a thing attached to the land but severable from it is damaged, he may at his election recover the loss in value to the thing instead of the damage to the land as a whole."

rather than the lesser of restoration costs or the diminution in value. They cite numerous California decisions that have invoked the following rule of damages for negligent injury to land: if the cost of restoration is less than the value of the property prior to the injury, such cost is the proper measure of damages, but if the cost of restoration exceeds such value, the value of the property is the proper measure. (See, e.g., *Green v. General Petroleum Corp.* (1928) 205 Cal. 328, 336 [270 P. 952, 60 A.L.R. 475]; *Salstrom v. Orleans Bar Gold Min. Co.* (1908) 153 Cal. 551, 558 [96 P. 292]; *Charles v. Reuck* (1960) 179 Cal.App.2d 145, 147 [3 Cal.Rptr. 490]; *Basin Oil Co. v. Baash-Ross Tool Co., supra,* 125 Cal.App.2d 578, 606; *Sager v. O'Connell* (1944) 67 Cal.App.2d 27, 31 [153 P.2d 569]; *Kell v. Jansen* (1942) 53 Cal.App.2d 498, 503 [127 P.2d 1033].) But these decisions are properly understood as stating, within the context of a total diminution in value, an obvious adjunct of the general rule that a plaintiff who seeks restoration damages cannot recover more than the amount of diminution in value of the land, i.e., that a recovery for diminution in value can never exceed the value of the land prior to the injury. Each decision has been cited in support of the general rule. (See *Mozzetti v. City of Brisbane, supra,* 67 Cal. App.3d at p. 576; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 919, p. 3204.)

The rule precluding recovery of restoration costs in excess of diminution in value is, however, not of invariable application. Restoration costs may be awarded even though they exceed the decrease in market value if "there is a reason personal to the owner for restoring the original condition" (Rest.2d Torts, § 929, com. b, at pp. 545-546), or "where there is reason to believe that the plaintiff will, in fact, make the repairs" (22 Am.Jur.2d, Damages, § 132, at p. 192). These variations have not yet been expressly recognized in California (see 4 Witkin, Summary of Cal. Law, Torts, § 919, p. 3204), but in *Mozzetti v. City of Brisbane, supra,* the court emphasized that the rule limiting recovery to the lesser of restoration costs or diminution in value is only a "general rule" (67 Cal.App.3d at p. 576).

One California case authorized recovery of restoration costs that exceeded diminution in value. In *Dandoy v. Oswald Bros. Paving Co.* (1931) 113 Cal.App. 570, 572-573 [298 P. 1030], the defendant had dumped earth and soil on the plaintiff's land, but the trial court determined that as a result, the value of the land had been increased. The appellate court reversed the judgment for the defendant, noting that the restoration costs were less than the original value of the property. "To

hold that appellant is without remedy merely because the value of the land has not been diminished, would be to decide that by the wrongful act of another, an owner of land may be compelled to accept a change in the physical condition of his property, or else perform the work of restoration at his own expense. This would be a denial of the principle that there is no wrong without a remedy." (*Ibid.*) The statement that the appellant had been wronged, despite the fact that the value of his property had been increased, implies a conclusion that the appellant had personal reasons for restoring the property to its previous condition and would in fact make the repairs. Similar considerations appear to have guided another court in limiting a plaintiff's recovery to "the injury sustained" from the digging of a ditch upon his land: "It is possible that the cost of filling up the ditch may far exceed any injury resulting from it in its present condition, and in that case it is not probable that the amount recovered would ever be used for that purpose." (*De Costa v. Massachusetts Mining Company* (1861) 17 Cal. 613, 617.) From these decisions, and from the absence of any authority rejecting the "personal reason" exception to the rule that recoverable damages cannot exceed diminution in value, it is to be concluded that the exception is viable in California.

The "personal reason" exception has been invoked in many jurisdictions in cases involving destruction of shade or ornamental trees that were of personal value to the owner. In recent years, "courts throughout the country have placed a greater emphasis on the rights of a property owner to enjoy the aesthetic value of trees and shrubbery, notwithstanding the fact they may have little commercial value or that their destruction may, indeed, even enhance the market value of the property." (*Rector, etc.* v. *C. S. McCrossan* (1975) 306 Minn. 143, 146 [235 N.W.2d 609, 610].) █ Where such trees or shrubbery are destroyed by a trespasser, "[s]ound principle and persuasive authority support the allowance to an aggrieved landowner of the fair cost of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in the market value of the land. . . ." (*Huber* v. *Serpico* (1962) 71 N.J.Super. 329, 345 [176 A.2d 805, 813]. Accord, *Ragland* v. *Clarson* (Fla.App. 1972) 259 So.2d 757, 759; *Roark* v. *Musgrave* (1976) 41 Ill.App.3d 1008, 1013 [355 N.E.2d 91, 95]; *Samson Construction Co.* v. *Brusowankin* (1958) 218 Md. 458, 466-467 [147 A.2d 430, 435-436; 69 A.L.R.2d 1326, 1332]; *Rector, etc.* v. *C. S. McCrossan, supra*, 306 Minn. at p. 146 [235 N.W.2d at p. 610]; *Morris* v. *Ciborowski* (1973) 113 N.H. 563, 566 [311 A.2d 296, 299, 79 A.L.R.3d 248] *Thatcher* v. *Lane Construction Co.* (1970)

21 Ohio App.2d 41, 49 [254 N.E.2d 703, 708]; *Pehrson v. Saderup* (1972) 28 Utah 2d 77, 79 [498 P.2d 648, 650].) If restoration of the land to a reasonable approximation of its former condition is impossible or impracticable, the landowner may recover the value of the trees or shrubbery, either as timber or for their aesthetic qualities, again without regard to the diminution in the value of the land. (*Samson Construction Co. v. Brusowankin, supra*, 218 Md. at pp. 466-467 [147 A.2d at p. 435]. See also *Turner v. Southern Excavation, Inc.* (La.App. 1975) 322 So.2d 326, 329.) The overall principles by which the courts are to be guided are "flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." (*Huber v. Serpico, supra*, 71 N.J. Super. at p. 346 [176 A.2d at p. 813].)

Courts have stressed that only *reasonable* costs of replacing destroyed trees with identical or substantially similar trees may be recovered. (See *Roark v. Musgrave, supra*, 41 Ill.App.3d at pp. 1013-1014 [355 N.E. 2d at p. 96]; *Samson Construction Co. v. Brusowankin, supra*, 218 Md. at pp. 466-467 [147 A.2d at pp. 435-436; 69 A.L.R.2d at p. 1332]; *Huber v. Serpico, supra*, 71 N.J.Super. at pp. 346-347 [176 A.2d at p. 813]; *Thatcher v. Lane Construction Co., supra*, 21 Ohio App.2d at p. 49 [254 N.E.2d at p. 708].) Proposed replacement costs may be unreasonable or excessive in relation to the damage inflicted upon the land (*Rector, etc. v. C. S. McCrossan, supra*, 306 Minn. at p. 146 [235 N.W.2d at p. 611]) or its value prior to the trespass (*Turner v. Southern Excavation, Inc., supra*, 322 So.2d at p. 329). In such cases, the achievement of a reasonable approximation of the land's former condition may involve something less than substantially identical restoration. Several decisions involving claims for the costs of identical replacement of a substantial number of mature trees have indicated that it may be more appropriate to award costs for the planting of saplings, or a few mature trees, or underbrush to prevent erosion and achieve a lesser but, over time, reasonable aesthetic restoration. (See *Samson Construction Co. v. Brusowankin, supra*, 218 Md. at pp. 470-471 [147 A.2d at pp. 437-438; 69 A.L.R.2d at p. 1334]; *Huber v. Serpico, supra*, 71 N.J.Super. at pp. 341, 346-347 [176 A.2d at pp. 811, 813]; *Thatcher v. Lane Construction Co., supra*, 21 Ohio App.2d at p. 44 [254 N.E.2d at p. 705].)

The common law principles guiding the assessment of damages for destruction of trees with personal value to their owner are controlling in the present case. If the trial court determined that appellants

had personal reasons for restoring their land to its original condition, and that such a restoration could be achieved at a cost that was not unreasonable in relation to the damage inflicted and the value of the land prior to the trespass, the court should have exercised its discretion to award such restoration costs. Alternatively, the court could have measured damages by the value of the trees and undergrowth, either as timber or for their aesthetic qualities.[2]

There was substantial evidence that appellants had personal reasons for restoring the land to its original condition. David Heninger testified, "I think the land is beautiful, the natural forest beautiful, and I would like to see it remain that way." He and his family lived on the land, and, aside from the portion of the property on which they resided, they intended to leave it unimproved. The cost of a substantially identical restoration, however, including the transplanting of a large number of mature trees and the restoration of the vegetative undergrowth is, at $241,257, a manifestly unreasonable expense in relation to the value of the land prior to the trespass.

A plant ecologist estimated the cost to restore the vegetative undergrowth at $19,610. This estimate included the costs of planting 230 sapling trees as well as numerous shrubs and ground cover. The plant ecologist testified that a restoration of small trees and shrubs "would leave a scar, but it would not be unsightly," and that it would prevent erosion. On retrial, the court's determination whether a reasonable restoration is possible should focus on the question whether an award of the cost of restoring the vegetative undergrowth (or some other method of covering the scar on the land and preventing further erosion) would achieve compensation within the overall limits of what the court determines to be just and reasonable.

Appellants contend that they are entitled to recover double damages pursuant to Civil Code section 3346, which provides for recovery of "twice the sum as would compensate for the actual detriment" for wrongful injury to timber, trees, or underwood as a result of a trespass that was "casual or involuntary" or committed by a defendant with "probable cause to believe that the land on which the trespass was com-

---

[2]Had appellants' first amended complaint alleged discomfort and annoyance as a result of the trespass, the court apparently could have awarded damages for such discomfort and annoyance that would naturally ensue from the trespass, without the requirement of accompanying physical injury. (*Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 275 [288 P.2d 507].)

mitted was his own."[3] Appellants' first amended complaint sought double damages, and also sought treble damages pursuant to Civil Code section 3346 and Code of Civil Procedure section 733,[4] which have both been construed as providing for recovery of treble damages where a trespass resulting in wrongful injury to timber, trees, or underwood was wilful or malicious. (*Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 171 [46 Cal.Rptr. 65]; *Crofoot Lumber, Inc.* v. *Ford* (1961) 191 Cal. App.2d 238, 241 [12 Cal.Rptr. 639]; *Roche* v. *Casissa* (1957) 154 Cal.App.2d 785, 788 [316 P.2d 776].) The trial court, in its memorandum of decision, stated that appellants were not entitled to recover treble damages because respondents had acted in a good faith belief that they held a valid easement; the court stated that because it found no compensable damage it did not reach the double damage issue. Respondents contend that the double damages provisions of Civil Code section 3346 are not applicable in the present case because they apply only to wrongful injury to wood with value as timber and because the amount to be doubled is the value of the wood as timber rather than its replacement cost.

---

[3]Civil Code section 3346: "(a) For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant in any action brought under this section had probable cause to believe that the land on which the trespass was committed was his own or the land of the person in whose service or by whose direction the act was done, the measure of damages shall be twice the sum as would compensate for the actual detriment, and excepting further that where the wood was taken by the authority of highway officers for the purpose of repairing a public highway or bridge upon the land or adjoining it, in which case judgment shall only be given in a sum equal to the actual detriment.

"(b) The measure of damages to be assessed against a defendant for any trespass committed while acting in reliance upon a survey of boundary lines which improperly fixes the location of a boundary line, shall be the actual detriment incurred if both of the following conditions exist:

"1. The trespass was committed by a defendant who either himself procured, or whose principal, lessor, or immediate predecessor in title procured the survey to be made; and

"2. The survey was made by a person licensed under the laws of this State to practice land surveying.

"(c) Any action for the damages specified by subdivisions (a) and (b) of this section must be commenced within five years from the date of the trespass."

[4]Code of Civil Procedure section 733: "Any person who cuts down or carries off any wood or underwood, tree, or timber, or girdles or otherwise injures any tree or timber on the land of another person, or on the street or highway in front of any person's house, village, or city lot, or cultivated grounds; or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, is liable to the owner of such land, or to such city or town, for treble the amount of damages which may be assessed therefor, in a civil action, in any Court having jurisdiction."

Statutes providing for recovery of double or treble damages for injuries to trees are intended to make timber appropriation unprofitable. "The normal use of Civil Code section 3346 is in cases where timber has been cut from another's land, either with or without knowledge that the cutting was wrongful. It has been suggested that the purpose of the statute is to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the owner." (*Gould* v. *Madonna* (1970) 5 Cal.App.3d 404, 408 [85 Cal.Rptr. 457].)

■ Whatever the original policy behind Civil Code section 3346 and the context within which it is normally used, the language of the statute is broad-sweeping, applying to "timber, trees, or underwood." Its application in a case involving damage to fruit trees has been upheld. (*Paul A. Mosesian & Sons* v. *Danielian* (1942) 52 Cal.App.2d 387, 388-389 [126 P.2d 363].) The term "underwood" commonly includes seedlings, saplings, shrubs, bushes, and small trees. (See Webster's Third New Internat. Dict. (1965); cf. *Pehrson* v. *Saderup, supra,* 28 Utah 2d 77, 78-80 [498 P.2d 648, 649-651] [wrongful destruction of lilac bushes; damages not to be trebled under statute applicable to "'wood or underwood, tree or timber'" for want of malice].) Neither the language of the statute nor past judicial construction supports respondents' contention that it is applicable only to injuries to trees that are valuable as timber.

Courts in several jurisdictions have held that the amount to be trebled or doubled under their applicable exemplary damages statutes for destruction of trees is the value of the trees as timber; but the statutes in these jurisdictions provide for doubling or trebling of "the value" of the trees. (See, e.g., *Keener* v. *Black River Electric Co-Operative* (Mo. App. 1971) 469 S.W.2d 657, 659; *Woodburn* v. *Chapman* (1976) 116 N.H. 503, 504-505 [363 A.2d 197, 198]; *Jones* v. *Georgia-Pacific Corp.* (1972) 15 N.C.App. 515, 517-518 [190 S.E.2d 422, 424-445]. But see *Ventoza* v. *Anderson* (1976) 14 Wn.App. 882, 884, 891-892 [545 P.2d 1219, 1222, 1226-1227] [statute provided for "'treble the amount of damages claimed or assessed'"; held that amount to be trebled was the value of the trees as standing timber prior to cutting].) In California, section 3346 provides for multiplication of "such sum as would compensate for the actual detriment." Civil Code section 3333, applicable to breaches of obligation other than contract, including negligent injury to real property, similarly provides for recovery of "the amount which will compensate for all the detriment proximately caused

thereby." On retrial, the court is to exercise broad discretion in determining what amount will achieve just and reasonable compensation. The court could determine that reasonable costs of conserving the site and providing regeneration of trees and undergrowth will meet the broad mandate of Civil Code section 3333. ■ In light of the substantially identical provisions of the two statutes, we conclude that the damages to be doubled or trebled pursuant to Civil Code section 3346 are those determined by the trier of fact to constitute just compensation within the overall limits of reasonableness, regardless of what specific measure of damages is used. (See *Roche* v. *Casissa, supra*, 154 Cal. App.2d 785, 788 [upholding trebling of damages measured by the diminution in the value of land on which trees stood].)

If on remand the trial court assesses damages to be awarded to appellants, such damages must be doubled, because the doubling provisions of section 3346, unlike its trebling provisions, are mandatory rather than discretionary. (*Drewry* v. *Welch, supra*, 236 Cal.App.2d 159, 179-180.)

Reversed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 3, 1980.