[No. F005813. Fifth Dist. Apr. 1, 1987.]

LELAND H. BAKER, Plaintiff and Respondent, v.
PHILLIP D. RAMIREZ et al., Defendants, Cross-complainants and
Appellants;
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Cross-defendant and Respondent.

COUNSEL

Kimble, MacMichael & Upton and David Douglas Doyle for Defendants, Cross-complainants and Appellants.

Crowe, Crowe, Crowe & Williams, Crowe & Williams and Daniel W. Crowe for Plaintiff and Respondent.

Mary Kay Reynolds, John H. Ernster and Clay M. Smith for Cross-defendant and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

Plaintiff and respondent, Leland H. Baker, filed a complaint against defendants and appellants, Phillip D. Ramirez and Lydia G. Ramirez, to quiet title, for declaratory relief, for an injunction, and for damages based on appellant's removal of two rows of orange trees from a twenty-foot wide strip of property over which each claimed ownership. Appellants cross-complained against the Atchison, Topeka and Santa Fe Railway Company (Santa Fe) which had deeded the disputed strip to appellants.

At trial, the court determined that the ownership issue was a question of law and permitted the admission of extrinsic evidence to aid in the interpretation of the deeds. The court found, based on the deeds and the subsequent conduct of the parties, that respondent held title to the disputed strip.

A jury tried the damage issue. After the presentation of the evidence, the court directed a verdict in favor of appellants and against Santa Fe for breach of contract in the amount of $1,067.14. The jury awarded a verdict for actual damages in favor of respondent and against appellants for $22,683. A mistrial was declared on the issue of punitive damages. The court then doubled the jury verdict to $45,366 under Civil Code section 3346.

We hold that the trial judge erred in finding that title to the disputed strip vested in respondent under the deeds. We remand for a further trial on the adverse possession issue. We affirm the determination of damages in the event respondent prevails on the adverse possession issue. We also affirm the verdict against Santa Fe for breach of contract.

STATEMENT OF FACTS

This dispute concerns a parcel of property comprising eight lots, numbered 168 through 175, of the Woodlake Tract of Tulare County. This parcel is divided into lots 168 through 171 on the north and lots 172 through 175 on the south, separated by a 40-foot-wide dedicated public road shown on the subdivision map as "Bravo Street."[1]

In 1911, John Maddock acquired lots 168 through 175 per the map recorded in the Tulare County Recorder's Office. In 1913, the Tulare County Board of Supervisors abandoned the portion of Bravo Street separating these lots.

In 1914, John Maddock and his wife, Mary E. Maddock, conveyed a 100-foot strip of land to the Minkler Southern Railway Company (Santa Fe's predecessor in interest) described as: "A tract of land one hundred (100) feet in width across the said South half (S½) of the Northwest quarter (NW¼) of the Northeast quarter (NE¼) of Section thirty six (36) the same being Lots one hundred seventy two (172), One hundred seventy three (173) one hundred seventy four (174) and one hundred seventy five (175) of Woodlake, as per map recorded in Book ten (10), pages twenty seven (27) and Twenty-eight (28) of Maps, in the office of the County Recorder of Tulare County, California, said tract lying south of and adjacent to the North line of said Lots one hundred seventy two (172), one hundred seventy three (173), one hundred seventy four (174) and one hundred seventy five (175).

"Excepting the southerly twenty eight (28) feet of the easterly two hundred (200) feet of the above described one hundred (100) foot strip.

"Containing two and nine-tenths (2.9) acres, more or less."

At about the same time as this parcel was conveyed to the railroad, Mr. Maddock planted an orange grove on parts of his property, including substantially all of the abandoned portion of Bravo Street.

By a series of conveyances, lots 168 through 171 were transferred first to Mr. Maddock's wife, and then to their son John R. Maddock, Jr. At the same time, lots 172 through 175 were transferred through Mrs. Maddock to their other son, Norris Maddock. These deeds described the lots per the subdivision map.

---

[1]The attached appendix depicts the subject property.

Santa Fe was not using the entire 100-foot strip for its tracks, and in 1947 John R. Maddock, Jr., obtained a license to cultivate the portion of the 100-foot strip lying north of the tracks. A map attached to the agreement designates the property subject to the license as lying south of Bravo Street.

Respondent acquired lots 168 through 171 by a deed from John R. Maddock, Jr., and Dorothy May Maddock in 1972. The deed describes the lots per the subdivision map and specifically notes the existence of the abandonment order pertaining to Bravo Street. John R. Maddock, Jr., also assigned the license to cultivate the Santa Fe right-of-way to respondent.

Appellants acquired lots 172 through 175 by a deed from Bertha L. Maddock in 1976. The deed describes the lots per the subdivision map "excepting therefrom that portion thereof conveyed to the Minkler Southern Railway Company, a corporation, in that certain deed recorded June 1, 1914 . . . ." This deed also specifically notes the existence of the Bravo Street abandonment order.

In 1979, appellants purchased the right-of-way from Santa Fe. The deed conveyed two parcels. Parcel one was described as the 2.9 acre parcel of land described in the deed to the Minkler Southern Railway Company from John Maddock and Mary E. Maddock recorded June 1, 1914, and parcel two was described as the south half of the abandoned portion of Bravo Street.

After appellants acquired the deed from Santa Fe, both appellants and respondent claimed the south two trees in each row of the orange grove. A survey was performed, and the centerline of Bravo Street was found to bisect the second line of trees in the grove.

In January 1981, appellants removed 84 orange trees located on the south half of Bravo Street. Crops were still on the trees. The land was left unlevel and full of holes, and an irrigation pipeline was damaged.

DISCUSSION

1. *The trial court erred in finding that respondent owned the south half of Bravo Street.*

Appellants contend that, as a matter of law, they have title to the south half of Bravo Street and that extrinsic evidence on the intent of the parties should have been excluded. Appellants postulate that the south half of Bravo Street either attached to their lots when Bravo Street was abandoned or attached to the 100-foot strip conveyed to Santa Fe's predecessor.

Civil Code section 1112 provides that "[a] transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." ██ Where property is sold by reference to a recorded map, the grantee generally takes to the center of the street shown on the map as bounding the property. (*Neff* v. *Ernst* (1957) 48 Cal.2d 628, 635 [311 P.2d 849].) Thus, each lot deeded to John Maddock in 1911 carried with it the half of Bravo Street abutting that lot.

██ Although an owner of a parcel of land holds fee title to the center of an adjoining street subject to the public easement, he has no right to the possession or occupancy of any portion of the street. However, when the strip set apart has never been accepted, used or improved as a street and is thereafter formally abandoned as such, the contiguous owner acquires such a right of possession and occupancy. (*Machado* v. *Title Guarantee and T. Co.* (1940) 15 Cal.2d 180 , 185 [99 P.2d 245].) ██ Thus, when the portion of Bravo Street bisecting the lots owned by John Maddock was abandoned in 1913, Mr. Maddock became entitled to possess and occupy that strip. The north half of Bravo Street became part of lots 168 through 171, and the south half of Bravo Street became part of lots 172 through 175 even though the entire parcel had a common owner. (*Pilkington* v. *Fausone* (1970) 11 Cal.App.3d 349 [90 Cal.Rptr. 38].)

██ When John Maddock conveyed the 100-foot right-of-way to Santa Fe's predecessor in 1914, the tract was described as lying "south of and adjacent to the *north line*" of lots 172 through 175 (italics added). Since at the time of the conveyance John Maddock owned and enjoyed the right to the possession of Bravo Street which adjoined the north line of said lots, the presumption of Civil Code section 1112 applied to make the centerline of Bravo Street the north line of said lots. (Civ. Code, § 1112; cf. *Earl* v. *Dutour* (1919) 181 Cal. 58, 60 [183 P. 438, 6 A.L.R. 1163].) However, due to the reference in the deed to the subdivision map which shows the north line to be the south edge of Bravo Street, it is uncertain whether the parties intended the 100-foot right-of-way to begin at the centerline of Bravo Street or at the south edge of Bravo Street.

The trial court admitted extrinsic evidence to aid in the interpretation of the deed to Santa Fe's predecessor. ██ Although extrinsic evidence is not admissible to add to, detract from, or vary the terms of a deed (*Pinsky* v. *Sloat* (1955) 130 Cal.App.2d 579, 588 [279 P.2d 584]), it is admissible to determine the issue involved when an ambiguity appears on the face of the deed. (*City of Redlands* v. *Nickerson* (1961) 188 Cal.App.2d 118, 125 [10 Cal.Rptr. 431].) ██ Since the deed was ambiguous with respect to where the 100-foot right-of-way began, the trial court properly admitted extrinsic

evidence to determine this issue. (See *Tomity Corp.* v. *Sovkueff* (1966) 244 Cal.App.2d 685 [53 Cal.Rptr. 328].)

■ The trial court concluded that John Maddock did not intend to convey any portion of Bravo Street to Santa Fe's predecessor based on Mr. Maddock's planting the orange grove to the south line of Bravo Street and on the railroad's placing survey stakes beginning at the edge of Bravo Street to mark the four corners of the 100-foot strip. ■ The practical construction placed on the deed by the parties as shown by their conduct may resolve the uncertainty in the deed. (*People* v. *Ocean Shore Railroad* (1948) 32 Cal.2d 406, 414 [196 P.2d 570, 6 A.L.R.2d 1179].) ■ When extrinsic evidence is properly admitted to interpret a deed, the trial court's finding must be sustained on appeal if there is any evidence, either direct or indirect, contradicted or uncontradicted, which supports that finding. (*City of Redlands* v. *Nickerson, supra,* 188 Cal.App.2d 118, 126.)

■ Here, the evidence of the parties' conduct relied on by the trial court supports the finding that John Maddock did not intend to convey any portion of Bravo Street to Santa Fe's predecessor, and thus that finding must be sustained. Therefore, the 100-foot right-of-way began at the south edge of Bravo Street.

Santa Fe's contention that the presumption of Civil Code section 1112 caused its predecessor's title to the 100-foot strip to include the south half of Bravo Street in addition to the described property is not persuasive. As noted above, this statute creates a presumption that the transfer of land bounded by a street includes the half of the street upon which the parcel abuts unless a different intent appears from the grant. Here, the grant of a specific number of feet carved out of contiguous lots evidences the grantor's intent that the street not be included in the conveyance. This conclusion is further supported by the evidence of the parties' conduct outlined above which was properly admitted to resolve the ambiguity contained in the deed. The authorities relied on by Santa Fe all pertain to the transfer of an entire lot bounded by a street, not a portion of a lot as here, and therefore are not controlling. In sum, when the 100-foot right-of-way was conveyed to the railway company in 1914, John Maddock retained ownership of the south half of Bravo Street. We turn now to the transfer of ownership of this parcel to appellants.

■ The trial court, interpreting the series of conveyances which ultimately vested title in appellants, concluded that it was not intended by the grantors in the deeds conveying lots 172 through 175 to include any portion of Bravo Street in the properties transferred. The court further concluded that the intent of the grantors in the deeds conveying lots 168 through 171

to John R. Maddock was to transfer title to the entire orange grove north of the 100-foot right-of-way. Thus, the court reasoned that John R. Maddock acquired fee title to all of the abandoned portion of Bravo Street and, accordingly, conveyed the entire strip to respondent.

The deeds in question granted the land by lot with reference to the subdivision map. No ambiguity is created by such a grant, and therefore extrinsic evidence should not be considered in interpreting the deed. (*Safwenberg* v. *Marquez* (1975) 50 Cal.App.3d 301 [123 Cal.Rptr. 405].) Thus, it was improper for the trial court to consider the existence of the orange grove when construing the deeds. ██ When the solution to the problem lies in the interpretation of the deeds without extrinsic evidence, the appellate court must resolve the issue independently of the trial court's determination. (*Pilkington* v. *Fausone, supra,* 11 Cal.App.3d 349.)

As discussed above, when Bravo Street was abandoned in 1913, the north half of the street became part of the north lots (168-171), and the south half of the street became part of the south lots (172-175). ██ Since no portion of the street vested in Santa Fe's predecessor by the 1914 deed and none of the deeds, until the 1979 deed from Santa Fe to appellants, specifically conveyed Bravo Street, the south half of Bravo Street remained with lots 172 through 175. Thus, when lots 172 through 175 were transferred to appellants, the south half of Bravo Street was included. We therefore reverse the trial court's finding that respondent owned the south half of Bravo Street.

This conclusion does not resolve the title question. Either respondent or his predecessor in interest, John R. Maddock, may have acquired the south half of Bravo Street through adverse possession. This issue was raised below, but the trial court based its decision solely on the deeds. Therefore, the case is remanded for a determination of the adverse possession issue.

II. *The trial court did not abuse its discretion in relieving respondent of his stipulation waiving an adverse possession claim.*

In his complaint, respondent raised the issue of adverse possession concerning the entire Bravo Street roadway. However, during discovery, respondent's counsel offered a stipulation that respondent was not seeking to establish title by adverse possession to the south half of Bravo Street. Respondent also agreed to this stipulation. When, based on this stipulation, appellant sought to exclude any evidence at trial relative to adverse possession through a motion *in limine,* the trial court relieved respondent of the stipulation. Appellants allege that the trial court abused its discretion in relieving respondent of the stipulation and that the stipulation should be upheld upon retrial.

Code of Civil Procedure section 283, subdivision 1 provides that an attorney shall have authority "[t]o bind his client in any of the steps of an action or proceeding by his agreement filed with the Clerk, or entered upon the minutes of the Court, and not otherwise."

Here, the stipulation was neither filed with the clerk, nor entered upon the minutes. Although such stipulations will be recognized if they have been executed and cannot be nullified without doing an injustice to one party (*Fresno City High School Dist.* v. *Dillon* (1939) 34 Cal.App.2d 636 [94 P.2d 86]), there is no evidence that such is the case here.

Further, a motion to be relieved from a stipulation is addressed to the sound discretion of the trial court, and the trial court's ruling will not be interfered with unless it is apparent that the court has abused its discretion. (*Brown* v. *Superior Court* (1935) 10 Cal.App.2d 365, 368 [52 P.2d 256].) It is within the trial court's discretion to disregard a stipulation that has been entered into through inadvertence or mistake of fact. (*Johnstone* v. *Bettencourt* (1961) 195 Cal.App.2d 538 [16 Cal.Rptr. 6].)

Respondent's counsel requested to be relieved of the stipulation on the ground he did not have all facts available to him when it was made. The court found that the adverse possession issue was presented by the pleadings and that while respondent would be deprived of a substantial property right and the ability to properly seek redress if the proposed stipulation were enforced, appellants would not be prejudiced by nullifying the stipulation. The court further found that the proposed stipulation was made before completion of discovery and investigation and when full facts and the complete analysis of applicable law had not been made. Based on these findings, the court determined it was equitable to relieve respondent of the stipulation.

The trial court's findings on the circumstances under which the stipulation was made are supported by the record and its reasoning on the effect of enforcing the stipulation is sound. Accordingly, the trial court's decision to relieve respondent of the stipulation was not an abuse of discretion.

III. *The trial court did not err in granting a directed verdict against Santa Fe limited to the amount appellants paid Santa Fe for the south half of Bravo Street.*

Appellants contend that the trial court, in granting a directed verdict against Santa Fe, erroneously relied on either a breach of contract or a failure of consideration theory and did not consider whether Santa Fe was negligent.

Appellants assert there was no basis in the pleadings for the court's decision, and it should therefore be reversed.

 Santa Fe conveyed the south half of Bravo Street to appellants by way of a grant deed. Thus, by implication, the conveyance contained a covenant that Santa Fe had not conveyed any interest in the estate to another and a covenant that Santa Fe had not encumbered the estate. (Civ. Code, § 1113.) These implied covenants in the deed only warranted against acts of Santa Fe or persons claiming under it and did not cover defects or failure of title for other reasons. (*Bryan* v. *Swain* (1880) 56 Cal. 616, 618.)

Appellants' cross-complaint against Santa Fe claimed the deed from Santa Fe was a warranty deed and alleged causes of action based on breach of implied covenants. These allegations were based primarily on Santa Fe's alleged failure to terminate a lease. The cross-complaint made no allegations concerning negligence.

As noted above, the deed from Santa Fe to appellants was a grant deed, not a warranty deed. Further, there was no evidence of a lease on the property. There was also no evidence Santa Fe either conveyed any interest in the south half of Bravo Street to another person or encumbered the south half of Bravo Street in breach of the implied covenants.

 The problem was that Santa Fe attempted to convey property it did not own. Appellants, therefore, could have proceeded against Santa Fe on a theory of a failure of consideration or breach of an agreement to convey real property. (*American Title Co.* v. *Anderson* (1975) 52 Cal.App.3d 255, 259 [125 Cal.Rptr. 24].) Further, when, as here, both parties mistakenly believe that the title is good, the grantee may recover the purchase price in quasi-contract. (*Mitchell* v. *California-Pacific T. Ins. Co.* (1926) 79 Cal.App. 45 [248 P. 1035].)

 Here, the trial court entered a directed verdict against Santa Fe, at Santa Fe's request, on a breach of contract or failure of consideration theory. When a motion for a directed verdict is granted, the substantial evidence rule governs appellate review of the judgment. (*Rodriguez* v. *North American Rockwell Corp.* (1972) 28 Cal.App.3d 441, 446 [104 Cal.Rptr. 678].) Santa Fe's attempted conveyance of property it did not own supports the trial court's finding.

 Appellants' cross-complaint did not set forth either a breach of contract theory or any theory upon which they could recover. However, since Santa Fe requested that judgment be entered against it on the

cross-complaint, it in effect waived any defect in the pleading. Therefore, the order granting the directed verdict is affirmed.

IV. *The measure of damages was proper.*

Appellants contend that the only proper measure of damages in this case is the depreciation in the value of the land due to the loss of the orange trees. At trial, evidence regarding the value of the mature crop on the trees at the time they were removed, the cost of the immediate repairs which were made, and the cost of replacing the trees and restoring the grove to its former condition was presented.

■ The measure of damages for tortious injury to property is "the amount which will compensate for all the detriment proximately caused thereby . . . ." (Civ. Code, § 3333.) There is no fixed rule for the measure of such damages. (*Pacific Gas & Elec. Co.* v. *County of San Mateo* (1965) 233 Cal.App.2d 268 [43 Cal.Rptr. 450].) One measure is the difference between the value of the property before and after the injury. However, an alternative measure is the cost of restoring the property to its condition prior to the injury. (*Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858, 862 [162 Cal.Rptr. 104].) Whatever measure is the most appropriate to compensate the injured party for the loss sustained in the particular case is the one which should be adopted. (*Ibid.*)

Appellants rely on *Rilovich* v. *Raymond* (1937) 20 Cal.App.2d 630 [67 P.2d 1062] to support their position. There, the court held that the diminution in the value of the land was the proper measure of damages for the destruction of mature orange trees. However, those orange trees were lost due to a lack of irrigation water, and the court determined it was unlikely that sufficient irrigation water would be available in the future. Since the grove could not be replaced, the court found that the restoration rule could not be applied and that diminution in value of the land was the proper measure of damages.

■ Here, there is no impediment to replacing the orange trees and, considering the small portion of the grove which was damaged, it is reasonable to do so. Thus, the cost of restoring the grove is the most appropriate measure of damages in this case. The orange trees are valuable only because they produce valuable fruit, and their worth is a proper method of determining the damage to the grove. (*Hill* v. *Morrison* (1928) 88 Cal.App. 405, 408 [263 P. 573].)

V. *Respondent's request for punitive damages did not preclude the trial court from doubling the damages awarded by the jury pursuant to Civil Code section 3346.*

 Civil Code section 3346, subdivision (a) provides that "[f]or wrongful injuries to ... trees ... upon the land of another, or removal thereof, the measure of damages is three times such sum as would compensate for the actual detriment, except that where the trespass was casual or involuntary, or that the defendant ... had probable cause to believe that the land on which the trespass was committed was his own ... , the measure of damages *shall be* twice the sum as would compensate for the actual detriment ...." (Italics added.) Under this section, if the trespass is found to be willful and malicious, the court *may* impose treble damages but *must* impose double damages. If the trespass is found to be casual and involuntary or under a mistake of fact, the court *must* impose double damages. (*Drewry* v. *Welch* (1965) 236 Cal.App.2d 159, 181 [46 Cal.Rptr. 65].) The damages to be doubled or trebled are those determined by the trier of fact to constitute just compensation within the overall limits of reasonableness, regardless of what specific measure of damages is used. (*Heninger* v. *Dunn, supra,* 101 Cal.App.3d 858, 869.)

Appellants assert that because respondent sought punitive damages under Civil Code section 3294, the trial court erred in doubling the damages under Civil Code section 3346 when punitive damages were not awarded. Appellants correctly assert that these doubling and trebling provisions under section 3346 must be treated as penal and punitive. (*Helm* v. *Bollman* (1959) 176 Cal.App.2d 838, 841 [1 Cal.Rptr. 723].) However, it does not follow that the trial court erred when it doubled the damages.

 Although the trebling provisions of Civil Code section 3346 are discretionary, the doubling provisions are mandatory. (*Drewry* v. *Welch, supra,* 236 Cal.App.2d 159.) Doubling the damages following a finding that punitive damages are not warranted under section 3294 is akin to doubling the damages after finding the trespass is not willful and malicious under section 3346. Thus, when punitive damages were not awarded, the trial court was still required to double the damages under section 3346. Statutory damages and punitive damages arising out of the same cause of action are not mutually exclusive. (*Marshall* v. *Brown* (1983) 141 Cal.App.3d 408 [190 Cal.Rptr. 392].) However, due to the penal nature of these provisions, the damages should be neither doubled nor tripled under section 3346 if punitive damages are awarded under section 3294. That would amount to punishing the defendant twice and is not necessary to further the policy behind section 3294 of educating blunderers (persons who mistake location of boundary lines) and discouraging rogues

(persons who ignore boundary lines). (See *Heninger* v. *Dunn, supra,* 101 Cal.App.3d 858, 868.)

The judgment vesting title to the south half of Bravo Street in respondent is reversed, and the case is remanded for a determination of the adverse possession issue. The orders relieving respondent of the stipulation and directing a verdict against Santa Fe are affirmed. In the event respondent prevails on the adverse possession issue, the trial court is directed to enter judgment against appellant in the amount of damages here affirmed.

Costs on appeal to be borne by each party.

Hamlin, J., and Martin, J., concurred.

A petition for a rehearing was denied April 27, 1987.

APPENDIX

Lot 168 Lot 169 Lot 170 Lot 171

Bravo street

Disputed area →
south ½ of
Bravo Street)

Railway Right-of-Way

Lot 172 Lot 173 Lot 174 Lot 175

Map, NW1/4 of NE1/4 of Sec. 36, T 17 S, R 26 W

Lots 168-175 of Woodlake, per map recorded
in Book 10, of Maps, pp. 27-28, O.R. Tulare County, Calif.

NORTH