[Civ. No. 22024. First Dist., Div. Three. Mar. 29, 1965.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Respondent, v. COUNTY OF SAN MATEO, Defendant and Appellant.

Keith C. Sorenson, District Attorney, and James M. Parmelee, Chief Civil Deputy District Attorney, for Defendant and Appellant.

Richard H. Peterson and Edward J. McGanney for Plaintiff and Respondent.

BRAY, J.†—Defendant appeals from judgment (trial without jury) in favor of plaintiff of $14,149.14 in an action in inverse condemnation.

## Questions Presented

1. Sufficiency of evidence to support finding of interference with plaintiff's easement.

2. Was the proper measure of damages applied?

## Record

In 1947 or 1949 plaintiff acquired an easement from the Menlo Investment Company (defendant's predecessor in title) for the installation of a gas pipeline. Part of the land subject to the easement was adjacent to Sand Hill Road (Searsville-Menlo Park Road) near Stanford University. The terms of the grant provided that the grantor "shall not erect, or construct, any building or other structure" within the boundaries of the easement right of way. That same year plaintiff constructed a 24-inch, steel gas transmission line beginning at Milpitas and terminating in San Francisco. The line crossed Sand Hill Road, then followed the right of way described in the above easement. In this general area the line was covered to a depth of approximately 4 feet.

Defendant subsequently acquired the land subject to plaintiff's easement and by 1959 had made plans to widen Sand Hill Road. Such reconstruction would have resulted in the placing of an additional 10 to 12 feet of fill over plaintiff's gas main. Defendant was informed by plaintiff that such added fill would not be in accordance with its pipeline engineering policies and that it proposed to relocate the main. Defendant's Engineering and Road Department voiced no objection to the relocation, which was then accomplished. In July 1960 the San Mateo County Board of Supervisors denied plaintiff's claim for the cost of relocation. This action followed.

The court found: "That defendant's plan for placing approximately 12 feet of earth fill over plaintiff's gas main was an interference with plaintiff's right of way and easement in that it would interfere with the proper operation of plain-

†Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

tiff's main, make maintenance and repair more difficult and was in direct violation of plaintiff's easement which provided that no structure was to be placed on the easement strip."

The court further found that the relocation was in the public interest; that defendant's plan to place 12 feet of earth fill over plaintiff's gas main made the relocation necessary, and that such relocation was not voluntary. Judgment in favor of plaintiff for $14,149.14 followed.

### 1. *Sufficiency of Evidence*

█ It requires no citation of authorities to state the well-known rule that in examining the sufficiency of the evidence to support a judgment the reviewing court must accept as true all evidence tending to support the correctness of the trial court's finding, including all inferences which may reasonably be drawn from such evidence.

The evidence amply supports the court's findings. █ The terms of plaintiff's easement grant specifically enjoined the construction of "any building or other structure" along the right of way. The initial question is thus presented whether defendant's highway project fell within the inhibition. In *Armenta* v. *Churchill*, 42 Cal.2d 448 [267 P.2d 303], the plaintiffs' decedent was killed while working on a highway surfacing project. A safety order of the State Division of Industrial Safety was applicable to "the excavation, construction, alteration, repairing, renovating, removal or wrecking of buildings *or other structures.*" (Italics added.) The court held at page 453 that "the repair and resurfacing of a highway would come within the phrase 'or other structures' . . . as a construction project affixed to real property." No reason exists for applying a restrictive definition to the words "or other structures" as used in plaintiff's easement, and the finding of the trial court that defendant's plan "was in direct violation of plaintiff's easement" is clearly correct. (Incidentally, this finding is not disputed in defendant's briefs.)

█ Defendant argues that plaintiff "because of its own policies determined to relocate the gas main involved, apparently deciding that the line would be of no value . . . whatsoever" and then contends that "the reconstruction of Sand Hill Road in no way affected the ability of plaintiff to continue to use the gas main in question in its original location." To the contrary, the evidence showed that the added fill would

seriously deter access to the line, make locating of leaks more difficult, substantially increase the stress to which the gas main would be subjected, and require greater time to reach the line. Moreover, plaintiff has no equipment to dig a ditch of the depth which would be required because of the increased fill. There was testimony that the new stress would be 23 per cent higher than that permitted in residential areas by ''Gas Transmission and Distribution Piping Systems,'' a nationally recognized industry code.[1]

There was contrary testimony to the effect that the possibility of a break even with the added fill would be remote and that the line could be safely operated at the higher stress. However, we are bound by the court's resolving of this conflict. Moreover, it clearly appears that the added stress would make the possibility of a break less remote than if the line were without such added stress. The pipeline carries a large volume of explosive gas through a residential community. Plaintiff in operating such a line must necessarily be concerned with margins of safety. The evidence shows that the margin of safety would be greatly reduced if plaintiff left its line subject to the greater stress. Even defendant's evidence concedes that this margin would be somewhat reduced.

The evidence fully supports the court's finding that defendant's plan ''would interfere with the proper operation of plaintiff's main.''

Defendant seems to contend that plaintiff instead of submitting to defendant's plan to reconstruct the road over plaintiff's easement, should have resisted defendant by bringing an injunction proceeding to prevent the interference with the easement. This would have been an idle act as defendant had the right of eminent domain and eventually the question would have to be decided, as it was in this case, namely whether the proposed improvement would be an interference with plaintiff's easement, and if so, the amount of damages recoverable.

In *Pacific Gas & Elec. Co.* v. *Minnette* (1953) 115 Cal. App.2d 698, 709 [252 P.2d 642], the appellants had erected a building on the strip of land over which the respondent had an easement for erecting and maintaining power lines.

[1]Subsequently to the time involved in this action the Public Utilities Commission adopted the pertinent provisions of this code as a part of its safety code. This fact may be taken into consideration as to whether the industry code provisions are fair and reasonable.

The court held that this was an encroachment, in violation of respondent's easement, saying, inter alia, "the situation created by appellants' building might well subject respondent to the alternative of corrective construction of its lines, or the risk of injury to third parties with resultant litigation." Plaintiff in the instant case was faced with a similar alternative. In the operation and maintenance of its gas main and as the owner of the easement, it had the responsibility of exercising a degree of care commensurate with the dangers reasonably to be apprehended from possible leaks in its main. (See *Central Kentucky Natural Gas Co.* v. *Huls* (1951 Ky. App.) 241 S.W.2d 986, 987 [28 A.L.R.2d 621].)

The extent to which the courts go to protect public utility easements is shown in *City of Los Angeles* v. *Jameson* (1958) 165 Cal.App.2d 351 [331 P.2d 1014]. There the city had an easement and right of way over the property of the defendants for the construction, maintenance and operation of electric power lines. The defendants erected chain link fences around the rear and side boundaries of their respective properties, thus enclosing a substantial portion of the right of way. The court found that the fences "would be a source of delay and extra expense in the event of electrical trouble at the location" (p. 357), and that the fences were an encroachment upon the easement and rendered its exercise unreasonably difficult, burdensome and expensive. If fences are an unreasonable encroachment on the exercise of the utility's easement surely the addition of 12 feet of earth fill on the easement here involved is also an unreasonable encroachment. Particularly is this so, when it is considered that in the above case, the interference could only cause the city expense in the event of trouble with its power lines, whereas in our case, in the event of trouble with the gas main, not only expense to plaintiff would be involved, but also inconvenience to plaintiff's consumers and danger to the public might be involved.

### 2. Measure of Damages

It is not clear from defendant's briefs exactly what it contends the measure of damages in the situation here should be. Defendant discusses the rule applicable in certain situations to the effect that the measure of damages for a permanent injury to real property is ordinarily the difference between the market value of the property prior to injury and its value immediately thereafter, (*Natural Soda Prod. Co.* v. *City of Los Angeles,* 23 Cal.2d 193 [143 P.2d 127]), then that

"another method of measuring the damage may be substituted if it is a more appropriate means of determining that damage" (in both instances referring to *Natural Soda Prod. Co., supra*) and that "where the damage to real property is susceptible of repair, the measure of damages is often the cost of repair." Defendant then refers to cases like *Salstrom* v. *Orleans Bar Gold Min. Co.*, 153 Cal. 551 [96 P. 292], holding that the cost of repairing will not provide the proper measure of damages if it exceeds the extent of the actual injury, or as in cases like *Sager* v. *O'Connell*, 67 Cal.App.2d 27 [153 P.2d 569], if it exceeds the value of the property. The briefs then refer to cases on severance damages.

Defendant's theory as nearly as can be made out from its briefs is that plaintiff did not meet its burden of proving damages because it showed no diminution in value of the easement as a result of defendant's plan, or that the cost of repair in the event of a break in the main would not have been less than the cost of relocation. Obviously diminution in the value of the easement in a situation like this is not a proper measure of damages, nor is a comparison of the cost of repair with the cost of relocation. In the interests of safety as well as the prevention of a stoppage of the flow of gas in its main, plaintiff as a public utility, is required to take precautions designed to prevent any break in its mains.

■ The court applied the proper measure of damages under the circumstances here, namely the cost of relocation of the main. The court found that the relocation was done in a proper manner and the cost was not excessive.

■ There is no fixed rule for the measure of damage to an interest in real property. Witness this statement in *Frustuck* v. *City of Fairfax*, 212 Cal.App.2d 345, 367 [28 Cal. Rptr. 357] : "Ordinarily, the recognized measure of damages in cases such as this [inverse condemnation] is the difference in the value of the real property immediately before and immediately after the injury. [Citations.] This method, however, is not exclusive. Accordingly, where appropriate to a particular situation, the measure of damages may be the cost of making repairs [citations] ; the loss of use of the property [citations] ; lost profits [citation] ; loss of prospective profits [citations] ; increased operating expenses pending repairs [citation] ; all of the detriment proximately caused by the injury as in other tort actions [citations] ; and present and prospective damages that are the natural, necessary or reasonable incident of the taking of property [citation]."

(See also Code Civ. Proc., § 1248, subd. 6.) In *Citizens Utilities Co.* v. *Superior Court,* 59 Cal.2d 805 [31 Cal.Rptr. 316, 382 P.2d 356], the court observed at page 817: " 'Fair market value' is not the exclusive standard by which to measure just compensation, and it is widely recognized that such a standard is meaningless when, as here, a public utility is being condemned." Plaintiff's relocation cost as the measure of damages is the proper measure in this case. (See *Wofford Heights Associates* v. *County of Kern,* 219 Cal.App.2d 34 [32 Cal.Rptr. 870]; *County of Los Angeles* v. *Wright,* 107 Cal.App.2d 235, 241 [236 P.2d 892].)

Defendant also contends that because the highway was there before plaintiff's gas main no recovery may be had. Plaintiff does not claim compensation for the portion of relocation cost attributable to its franchise under the highway, and the prior existence of the highway is irrelevant to plaintiff's private right of way. (See *County of Contra Costa* v. *Central Contra Costa Sanitary Dist.,* 225 Cal.App.2d 701, 703 [37 Cal.Rptr. 767].)

Defendant also sets forth some obscure objections to the credits made by plaintiff for the accrued depreciation on the replaced line and the depreciated salvage value of the pipe recovered. It is stated that plaintiff's appraiser "merely applied usual accounting practices of plaintiff in arriving at his computations." No alternative method is suggested by defendant nor is there any assertion that the method used was improper from an accounting standpoint. In *Citizens Utilities Co.* v. *Superior Court, supra,* 59 Cal.2d 805, 817, the court approved a "cost-less-depreciation" valuation for portions of the condemned facilities there involved. Here defendant's accountant testified that "the sinking fund method will produce the same result as a present worth method in figuring values."[2]

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

---

[2]Presumably, the "present worth" and the "cost-less-depreciation" methods are the same.