[No. D016527. Fourth Dist., Div. One. Nov. 2, 1993.]

JOHN HOUSLEY, Plaintiff and Respondent, v.
CITY OF POWAY et al., Defendants and Appellants.

**COUNSEL**

LaRocque, Wilson, Mitchell & Skola, Mitchell & Skola, Arthur H. Skola, Bryan A. Gianesin and Jack Mitchell for Defendants and Appellants.

McDougal & Associates and Sandra J. Brower for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—Appellants the City of Poway (City) and CF Pomerado (Developer) appeal from the judgment in favor of respondent John Housley (Housley). The jury awarded $40,000 against City as damages for inverse

condemnation and $112,452 against Developer for fraud damages. The central issue on appeal is whether the damage instructions were correct.[1]

## I. *Facts*

Housley was the longtime owner of a one-acre parcel in Poway. He had built and occupied a residence on that parcel. The parcel, which abutted Pomerado Road, was in the path of the expansion of Pomerado Road, and the events surrounding the expansion of that road gave rise to this lawsuit.

Developer, who owned and developed a business park in Poway, was required as part of its development to widen Pomerado Road to handle anticipated traffic increases. This road widening required acquisition of rights-of-way and road-widening easements from abutting property owners, one of whom was Housley.

In early 1987, Developer contacted Housley to discuss acquiring a right-of-way, along with the necessary easements, to allow widening of the road. In mid-1987, Developer submitted its offer of $7,250 (the appraised value of the land) for the right-of-way and a "slope easement," and requested Housley's response.

In the discussions between Housley and Mr. Bothwell (Developer's representative), Bothwell requested a "slope easement" be granted. Housley refused his request. Bothwell testified he told Housley that if the slope were a "2-to-1" slope, City would require an access easement in order to maintain the slope to assure its long-term viability. However, Bothwell testified he told Housley that he, Bothwell, would explore whether City would accept a flatter slope (i.e., a "4-to-1" or "5-to-1" slope) in lieu of the easement.

Housley eventually signed a grant deed for the right-of-way, from which deed all prior references to the "slope easement" had been deleted.[2] Housley testified Bothwell had assured him that the road would be elevated only 18 inches. Housley repeatedly told Bothwell that he, Housley, would not consent to an easement or slope, and Housley made sure the grant of a "slope

---

[1]Appellants also claim the trial court erred (1) in admitting certain evidence concerning neighbors' retaining walls; (2) in refusing to grant their nonsuit motion; (3) in refusing to grant a new trial; and (4) in issuing its order on the motion to tax costs.

[2]At the same time, Housley signed a "permission to grade" letter. Appellants claimed that because Housley had also been given a set of grading plans showing the flatter slope, Housley's signature on the "permission to grade" letter (combined with Bothwell's testimony that he had explained, and Housley had understood, this flatter slope would be constructed) demonstrated he consented to this arrangement. The decision by the triers of fact showed they rejected this claim and accepted Housley's explanation that he signed the "permission to grade" letter on the understanding it allowed only minor drainage grading, and that no one had ever shown him where the perimeter of the regraded land would fall.

easement" had been deleted from the grant deed for the right-of-way before he signed it. In short, Housley understood and believed no slope would be placed on his land.

The construction was far different from what Developer had represented to Housley. Developer placed a huge slope on Housley's property without permission. At its highest encroaching point the slope rose five feet two inches above original grade, and at its widest point the toe of the slope extended forty-two feet onto Housley's property. The area under the slope is 10,238 square feet.

Housley complained during construction that the slope was well beyond that which he had accepted. His complaints brought no relief, however, and the slope became a permanent feature on his land.

The evidence on damages was divergent. Only appellants' expert testified concerning the value of the "taken" land—the 10,000-plus slope area. He opined the value of the entire fee interest of the "taken" land was $40,400. He further testified that only an easement for the slope was "taken" (with Housley retaining the rest of the rights in the land), and such slope easement was worth only $10,100.

Housley introduced no evidence on the fair market value of the land. Instead, he introduced the testimony of a civil engineer to show "cost of repair." The engineer testified it would be possible to remove the entire slope and replace it with a retaining wall to provide the lateral support for the road. He prepared a cost estimate for that project, estimating the total cost to restore the original grade and provide the retaining wall for lateral road bed support to be $152,452.

## II. *The Lawsuit*

Housley's complaint against City was for damages based on inverse condemnation. It claimed that the slope was effectively a "taking" for which compensation was due. Housley's complaint against Developer was for fraud, claiming Developer falsely represented that no slope would be built in order to induce Housley to grant the right-of-way for the offered price.

The matter was tried to both the judge (on the issue of whether there had been a taking) and the jury (on the just compensation issue against City and on the fraud claim against Developer). The court determined there had been a taking, which determination is not challenged here. The jury then awarded $40,000 as against City and $112,452 as against Developer. Following the motion to tax costs, this appeal was filed.

III. *Issues on Appeal*

The central issues on appeal relate to the damage award. The court rejected City's effort to limit the damage instruction to "fair market value" of the taken property, and instead instructed the jury it could consider other measures of damage for inverse condemnation, including cost of repair. Appellants also assert the fraud damages were improper.

IV. *The Instruction on Inverse Condemnation Damages Was Erroneous*

■ City attempted to restrict the damage component of trial to "fair market value" and to preclude the jury from considering "cost of repair" as the measure of damage.[3] The court rebuffed City's efforts, specially instructing on damages: Just compensation must be paid to an owner for the taking [of] or damage to his property, by a public entity for public use or benefit. There's no fixed rule for the measure of damages in inverse condemnation. The measure of damages may be the cost of repairs, the diminution in value of the property, or any other method that measures the damages resulting from the injury to the property.

City argues, and we agree, that the court erred in giving this instruction. ■ In an action for inverse condemnation the owner effectively concedes, and indeed affirmatively contends, that the governmental action has taken the property, and thus the focus is on the amount of compensation to be awarded rather than on the propriety of the taking. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 963 [218 Cal.Rptr. 839].) By suing for damages rather than for ejectment or injunction, the owner essentially "tenders" the taken land and demands just compensation.

■ The normal measure of "just compensation" in most inverse condemnation cases is the same as that which applies in eminent domain proceedings: "fair market value." (*Tilem* v. *City of Los Angeles* (1983) 142 Cal.App.3d 694, 707 [191 Cal.Rptr. 229].) This measure is not based on what the taker has gained, but rather is based on what the owner has lost. (*Id.* at p. 702.)

The courts have recognized, however, that "just compensation" may, under unusual circumstances, require an application of a different measure. (*Pacific Gas & Elec. Co.* v. *County of San Mateo* (1965) 233 Cal.App.2d 268,

---

[3]City argued, by motion *in limine*, that all evidence of cost of repair should be excluded as irrelevant because only "fair market value" is recoverable. The court denied that motion. City renewed its contention by requesting that the court give the BAJI set of instructions on condemnation damages which state that fair market value is the measure of just compensation. The court rejected this effort as well.

274-275 [43 Cal.Rptr. 450].) ▮▮▮ Because the court's instruction below did not limit the jury to "fair market value," but allowed it to choose as its guideline "cost of repair" or diminution in value or "any other method that measures the damages," we must evaluate whether this case is one of the extraordinary cases in which the alternative measure of "cost of repair" is necessary for just compensation.[4]

We are convinced that the factors which have led the courts to depart from the ordinary "fair market value" approach in favor of the "cost of repair" approach are absent here. We are aware of only one case involving inverse condemnation which *actually* applied cost of repair in lieu of fair market value. The peculiar facts of *Pacific Gas & Elec. Co.* v. *County of San Mateo*, *supra*, 233 Cal.App.2d 268 convinced the court that "cost of repair" was a more appropriate measure. There, the owner (a gas company) had an easement on which it had installed a gas pipeline. The "taking" involved burying sections of the pipe under 12 additional feet of dirt, which depth was incompatible with the gas company's engineering policies and would make repair and maintenance more difficult. (*Id.* at pp. 270-271.) The court concluded the cost to relocate the pipe—cost of repair—was appropriate because safety concerns, as well as the interest in ensuring the continued flow of gas, mandated that the owner have reasonable access for repairs and maintenance even after the taking. (*Id.* at p. 274.) Thus, "cost of repair" was used because the system as a whole would be detrimentally affected without relocation of the pipe. Here, nothing suggests that, absent repair, Housley's ability to make use of the remainder of his property would be adversely affected or would constitute a threat to safety.[5] As noted, *Pacific Gas & Elec. Co.* is the only case we have found which actually used "cost of repair" in place of "fair market value." The other cases which mention the propriety of "cost of repair" in lieu of "fair market value" provide no aid to Housley's argument. While *Frustuck* v. *City of Fairfax*, *supra*, 212 Cal.App.2d 345 did list "cost of repair" as one of its alternative measures, that reference was pure dictum, because the court ultimately held that "[w]hatever the proper measure of damages may be in a given case," the award was too speculative

---

[4]Besides "cost of repair," the courts have articulated numerous other alternative measures for providing just compensation, such as loss of past or prospective profits, loss of use of the property, increased operating expenses, etc. (See *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 367 [28 Cal.Rptr. 357].) However, Housley does not claim any alternative other than cost of repair to be appropriate here, nor does it appear that any of the alternative measures might apply.

[5]As an additional rationale for adopting an alternative measure of damage, the *Pacific Gas & Elec. Co.* court stated: " '[I]t is widely recognized that [fair market value] is meaningless when, as here, a public utility is being condemned.' " (233 Cal.App.2d at p. 275.) That factor is also absent here.

to stand.[6] (212 Cal.App.2d at pp. 367-368.) *Frustuck* relied on two cases, *Natural Soda Prod. Co.* v. *City of L.A.* (1943) 23 Cal.2d 193 [143 P.2d 12] and *LeBrun* v. *Richards* (1930) 210 Cal. 308 [291 P. 825, 72 A.L.R. 336], to support its statement that "cost of repair" is an alternative. Neither case, however, supports that proposition. In *LeBrun*, involving a diversion of floodwaters, the court stated both parties had tried the case on the theory that cost of repair was the proper measure ". . . whereas the correct rule is that the measure of damages . . . is the difference, if any, in its market value before and immediately after the injury." (*LeBrun*, *supra*, at p. 319.) Thus *LeBrun* undercuts, rather than supports, *Frustuck*'s dictum. The *Natural Soda Prod. Co.* case is wholly inapposite, because it involved neither inverse condemnation nor a permanent taking. The plaintiff in that case owned a mineral processing plant which was physically damaged by flooding from excessive water released from a dam. The court, not surprisingly, merely held that the cost of repair to the damaged plant was the appropriate measure of damages for the injuries caused by such tort.[7] The only authority in which the "fair market value" rule was actually supplanted by "cost of repair" is *Pacific Gas & Elec. Co.* v. *County of San Mateo*, *supra*, 233 Cal.App.2d 268. That case, being unique and dissimilar from our facts, does not control this case.

The argument that "cost of repair" should be the measure of damages in an inverse condemnation case seems to us basically illogical, at least in a situation in which only land is taken and improvements are not damaged. The theory of inverse condemnation is that property has been taken and devoted permanently to public use, the full and appropriate remedy for which is compensation at fair market value. (*Salton Bay Marina, Inc.* v. *Imperial Irrigation Dist.*, *supra*, 172 Cal.App.3d at p. 963.) When property has been acquired and paid for in its entirety, there remains no basis upon which "cost of repair" has any application. It would constitute double recovery to require the condemning agency to pay to acquire the land and then pay an additional amount based upon what it might cost the landowner to recapture the same land. The *Frustuck* court rejected as a double recovery

[6]Housley cites dictum in *Tilem* v. *City of Los Angeles*, *supra*, 142 Cal.App.3d 694 to support his "cost of repair measure." We are unconvinced by *Tilem*. First, *Tilem* relied uncritically on *Frustuck* for the proposition that cost of repair is allowed, and we question *Frustuck*'s analysis for the reasons discussed below. Second, *Tilem*'s reference to cost of repair was pure dictum, because cost of repair was never an issue in *Tilem*. *Tilem* actually used fair market value to measure damages. (*Id.* at p. 707.)

[7]For the same reasons, *Dandoy* v. *Oswald Bros. Paving Co.* (1931) 113 Cal.App. 570 [298 P. 1030] is irrelevant. There, cost of repair was the measure of damages, but the claim was for trespass involving the dumping of material on plaintiff's land. Thus, the case involved neither inverse condemnation nor a permanent taking. Moreover, in approving cost of repair, the court noted: "The cost . . . will be, in effect, the amount of diminution in value of the land, resulting from the wrong committed by defendant." (*Id.* at p. 573.) Thus, it appears that decline in fair market value, as measured by cost of repair, was actually used in *Dandoy*.

an award which enjoined future runoff and required payment for the injury which future runoff would cause. (*Frustuck* v. *City of Fairfax*, *supra*, 212 Cal.App.2d at pp. 368-369; see also *Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 575-577 [136 Cal.Rptr. 751] [improper to allow award for diminution of fair market value and cost of repair].)

Further, the particular facts of this case make damage based on "cost of repair" inappropriate. The measure applicable to ordinary cases involving tortious injury to real property is "diminution in value" or "cost of repair," whichever is less. (*Mozzetti* v. *City of Brisbane*, *supra*, 67 Cal.App.3d at p. 576.) This rule is not inflexible, and in *Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858 [162 Cal.Rptr. 104] the court held that cost of repair could be recovered even though the wrongful act of bulldozing a road and destroying trees had actually increased the fair market value of the property. The *Heninger* court concluded that where the owner has a personal reason to repair the damage, *and the cost of repair is not unreasonable in relation to the value of the land and the damage inflicted*, cost of repair can be recovered even though it is higher than diminution in value. (*Id.* at pp. 865-866.) This court in *Orndorff* v. *Christiana Community Builders* (1990) 217 Cal.App.3d 683 [266 Cal.Rptr. 193] similarly concluded that where the plaintiff has a personal reason to make repairs, and the repair costs are reasonable in relation to both the value of the realty and the damage inflicted on the realty, cost of repair could be awarded. (*Id.* at pp. 690-691.) Here, the *Heninger/Orndorff* exception would not apply because the cost of repair so vastly exceeds the harm done that it would as a matter of law be unreasonable to award cost of repair. The appraiser opined that the fair market value of the slope easement was $10,100. Moreover, even in the worst case (i.e., if the slope had effectively deprived Housley of the entire fee interest in the land), the value of the fee would be only $40,400. Allowing cost of repair of $152,000 would permit an award ranging from three and one-half to fifteen times the actual injury, falling well outside the "reasonable relationship between cost of repair and actual harm" which *Heninger and Orndorff* require.

We therefore conclude (1) fair market value is the general measure of damages for inverse condemnation; (2) this case does not involve unique facts demanding departure from the general rule; and (3) in any event, the cost of repair so vastly exceeds the actual harm done that it would be unreasonable to use "cost of repair" as the measure of damage.

## V. *The Instructional Error Was Prejudicial*

In that the instruction to the jury erroneously permitted its members to consider (and, indeed, elevated to first position) the cost of repair measure, we must determine whether the error was prejudicial. Housley argues

on appeal that the award of $40,000 against City was "clearly based on the value of Housley's property that was taken." He notes City's expert valued the fee interest at $40,400. He claims that because there was evidence he could not place improvements on the affected area, a jury could have concluded he was deprived of substantially all benefits of the property, thereby justifying an award of $40,000.

Housley's argument—although not framed as such—is that because the jury award approximated the fair market value of the fee interest of the taken property, any instructional error was harmless. ■ When erroneous instructions have been given, and/or proper instructions refused, we must assess the entire record to determine prejudice. (*Williams* v. *Carl Karcher Enterprises, Inc.* (1986) 182 Cal.App.3d 479, 489 [227 Cal.Rptr. 465].) When it seems probable the jury's verdict *may* have been based on the erroneous instructions, prejudice appears and we will not speculate on the basis for the verdict. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353].)

■ It is true the $40,000 award is near the value of the fee interest. However, the appraiser also opined that the fair market value of the slope easement (i.e., that which was "taken") was only $10,100. When only an easement is taken, and the property retained by the owner still has substantial value, the condemnor is liable to pay for only the value of the easement, unless the nature of the easement taken suggests it is in substance a fee interest, in which event the condemnor must pay for the full value of the fee interest. (*Pacific Gas & Elec. Co.* v. *Hufford* (1957) 49 Cal.2d 545, 552-553 [319 P.2d 1033].) A properly instructed jury could well have decided only an easement was taken and the property had some significant remaining value.

Although it is conceivable the $40,000 award was intended as "fair market value," it is more likely that the jury disregarded the only evidence of fair market value of the easement and instead seized upon the "cost-of-repair" figure in making its award. We believe it is not mere coincidence that the "cost-of-repair" figure of $152,452 matches, to the dollar, the sum of the jury's award against City and Developer. It thus appears that the jury simply used the "cost-of-repair" figure and divided it among the defendants. We therefore conclude the error was prejudicial and must reverse.

## VI. *The Instructions on Compensatory Damages for Fraud Were Prejudicially Erroneous*

Housley's cause of action against Developer was for fraud. Housley alleged that in connection with Developer's attempt to convince Housley to

grant the right-of-way for the roadbed, Developer had falsely represented there would be no easement, and further alleged that Housley sold the right-of-way to City in reliance on that misrepresentation. ▪ ▪ There was no evidence any other fraud had occurred.[8]

 Under Civil Code section 3343, damages for fraud in connection with the sale of property are measured by the difference between the actual value with which the victim parted and the value he received (the so-called "out-of-pocket-losses"), together with additional damages arising from the fraud, such as amounts spent in reliance, compensation for loss of use of the property, and lost profits. Defendants requested an instruction under section 3343. The court rejected that request and instead instructed the jury that it could award "all damages legally caused by the misrepresentation."

In California a defrauded party is ordinarily limited to recovering his "out-of-pocket" loss—the difference between the value with which he parted and the value he received. (*Christiansen* v. *Roddy* (1986) 186 Cal.App.3d 780, 790 [231 Cal.Rptr. 72].)[9] This measure would entitle Housley to recover damages measured not by what he could have reaped had the promise to preserve his land been true, but by what he lost because of his reliance on the false promise.

Here, the fraud caused Housley to part with the right-of-way and the area covered by the slope, yet receive payment only for the right-of-way. Under

---

[8]On appeal, Housley (perhaps belatedly recognizing the fraud actually pleaded and proved below would restrict his recovery of damages under Civ. Code, § 3343) argues there was evidence of fraud apart from the sale of the right-of-way. Specifically, his appellate brief claims that after the right-of-way had been conveyed, he was reassured no slope would be installed, and thereafter was promised that a retaining wall would be constructed, both of which representations were false. We do not consider these representations in our analysis. First, these false representations are outside those pleaded as the basis for the fraud claim, and Housley did not seek to amend to conform to proof. Since neither of these representations was pleaded or argued as part of the fraud claim below, it is too late to claim either of them as the basis for the fraud judgment. (See *Ernst* v. *Searle* (1933) 218 Cal. 233, 240 [22 P.2d 715].) Second, and more importantly, there is no evidence these "post-sale" misrepresentations caused any action in reliance thereon or any damages, both of which are essential to a fraud claim. (See generally *Cicone* v. *URS Corp.* (1986) 183 Cal.App.3d 194, 200 [227 Cal.Rptr. 887].) We thus do not evaluate these "post-sale" misrepresentations.

[9]Prior to the enactment of Civil Code section 3343 there was confusion over the proper measure of fraud damages in California. (*Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 759-762 [192 P.2d 935].) The two competing measures of recovery were the "benefit-of-the-bargain" measure and the "out-of-pocket" measure. The "benefit-of-the-bargain" awards the difference between the actual value of the property received and the value it would have had if in the state represented. However, under the "out-of-pocket" approach the defrauded party receives only the difference between the value of the property received and the amount he paid. The adoption of section 3343 placed California among the jurisdictions using the "out-of-pocket" measure. (See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1441, pp. 914-915.)

the "out-of-pocket" standard, the difference between that with which he parted and that which he received was the value of the land buried by the slope.

We are cited no relevant authority in which either "cost of repair" or "benefit-of-the-bargain" damage was awarded for fraud occurring in an arm's-length transaction. Although "benefit-of-the-bargain" damages were awarded for fraud in *Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685 [134 Cal.Rptr. 709], that case involved fraud by a fiduciary, which situation the courts have acknowledged calls for a broader measure of damages. (*Id.* at pp. 688-689.) Housley's reliance on *Raven's Cove Townhomes, Inc.* v. *Knuppe Development Co.* (1981) 114 Cal.App.3d 783 [171 Cal.Rptr. 334], cited to support his argument that cost of repair is an appropriate measure of damages, is equally misplaced. The *Raven's Cove* court specifically stated it would use "cost of repair" under Civil Code section 3333 in lieu of "out-of-pocket" because recovery was predicated on strict liability rather than fraud. (114 Cal.App.3d at p. 801, fn. 12.) The other cases upon which Housley relies involved the measure of damages used in strict liability cases (e.g., *Orndorff* v. *Christiana Community Builders, supra*, 217 Cal.App.3d 683) or in trespass cases (e.g., *Dandoy* v. *Oswald Bros. Paving Co., supra*, 113 Cal.App. 570), not in fraud cases.

In short, Housley cites no authority holding that "cost of repair" is at all relevant in a case where an owner of property is induced by fraud to part with his land. Accordingly, fraud damages must be limited to those permitted under Civil Code section 3343, that is, out-of-pocket loss (here, the value of the land taken for the slope) together with any other damages within the scope of section 3343.[10]

## VII. *The Denial of Appellants' Nonsuit Is Not Reversible Error*

Appellants moved for nonsuit because Housley failed to introduce evidence of fair market value. ■ On appeal, appellants urge it was reversible error to deny the motion because evidence of damage, which is essential, was absent here. However, appellants subsequently introduced evidence

---

[10]We note that regardless of whether the theory is fraud or inverse condemnation, Housley lost the same thing: the land is now occupied by a slope. The same measure of damages (i.e., fair market value) applies whether the theory of recovery is inverse condemnation (see pt. 4, *ante*) or fraud (see, e.g., *Herzog* v. *Capital Co.* (1945) 27 Cal.2d 349, 353 [164 P.2d 8]). Because the same measure applies, the damage award against each of the defendants (at least on the showing here) will largely be parallel. Accordingly, in order to prevent an improper double recovery (*Mozzetti* v. *City of Brisbane, supra*, 67 Cal.App.3d at pp. 575-577), the court must ensure on remand that the judgment is joint and several insofar as it awards the value of the property taken, but is several as against Developer to the extent any additional damages for fraud (such as amounts spent in reliance, or lost use of the property) may be assessed by the jury.

of fair market value and diminution in value. It is well established that an order denying nonsuit will not be disturbed on appeal despite justification of nonsuit by evidence presented at close of plaintiff's case, if the evidence subsequently introduced by defendant "cures" the missing element. (See, e.g., *Peters* v. *Southern Pacific Co.* (1911) 160 Cal. 48, 52-53 [116 P. 400].) Any error was therefore harmless.

## VIII. *The Remaining Contentions Are Moot*

We briefly note that the three remaining contentions are largely resolved or mooted by our decision. Appellants claim they should have been granted a new trial on the issue of damages. Our decision to reverse and remand for such a new trial grants appellants the requested relief. Appellants also protest against the admission of evidence that retaining walls were built on other persons' parcels. Our determination that cost of repair is not the correct measure of damages in this case renders such retaining wall evidence irrelevant, and it will therefore be inadmissible on remand. Finally, appellants complain the trial court's decision on the motion to tax costs was error. In that the issue of damages will be retried, the question of costs must be reassesed after the verdict on remand is entered.

## DISPOSITION

The judgment is reversed and the case remanded for retrial on the issue of damages only. Appellants shall recover costs on appeal.

Wiener, Acting P. J., and Work, J., concurred.